Terence E. Timblin
**McKEOWN • VERNIER • PRICE • MAHER**
A Joint Venture of McKeown Price LLP
 and Vernier & Maher LLP
**115 Hesler Place
Ground Floor, Governor Joseph
 Flores Building
Hagåtña, Guam 96910
Telephone: (671) 477 7059
Facsimile: (671) 472-5487**

**Attorney for Plaintiff
KAIOH SUISAN CO., LTD.**

FILED
DISTRICT COURT OF GUAM
FEB 06 2003
MARY L. M. MORAN
CLERK OF COURT

# UNITED STATES DISTRICT COURT

## DISTRICT OF GUAM

| | |
|---|---|
| KAIOH SUISAN CO., LTD. | CIVIL CASE NO. 02-00021 |
| Plaintiff, | |
| vs. | **PLAINTIFF KAIOH SUISAN CO., LTD.'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM; CERTIFICATE OF SERVICE** |
| GUAM YTK CORP., | |
| Defendant. | |

**COMES NOW**, Plaintiff **KAIOH SUISAN CO., LTD.** through counsel, **McKEOWN • VERNIER • PRICE • MAHER**, by **TERENCE E. TIMBLIN**, and moves this Court for summary judgment against Defendant on the grounds that the Defendant has admitted the existence of the written Agreement and that it received and accepted the ONE HUNDRED MILLION JAPANESE YEN (¥100,000,000) pursuant to the Agreement, and is now barred by the parol evidence rule from altering, amending or contradicting its terms.

-1-

ORIGINAL

This motion is made pursuant to Rule 56 of the Federal Rules of Civil Procedure and LR 7.1, and is supported by the Memorandum of Points and Authorities below, the record of the proceedings and papers on file herein, the record in Civil Case No. 02-00015, together with any and all evidence to be adduced at the hearing of the within motion.

Respectfully submitted this 6th day of February, 2003.

**McKEOWN • VERNIER • PRICE • MAHER**
Attorneys for Plaintiff
**KAIOH SUISAN CO., LTD**

BY: _____
TERENCE E. TIMBLIN

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. APPLICABLE LAW

Rule 56 of the Federal Rules of Civil Procedure reads, in part, as follows:

> (a) For Claimant. A party seeking to recover upon a claim, counterclaim, cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after a service of a motion for summary judgment by the adverse party, move, with or without supporting affidavits, for a summary judgment in the party's favor upon all or any part thereof.
>
> . . .
>
> (c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party, prior to the day of the hearing, may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

-2-

Case 1:02-cv-00021   Document 6   Filed 02/06/2003   Page 2 of 19

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

The Ninth Circuit Court of Appeals, in <u>California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.</u>, 818 F.2d 1466 (9th Cir. 1987), has set forth the standard as to when summary judgment should be granted.

> In three recent cases, the Supreme Court, by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment. First, the Court has made clear that if the nonmoving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986) Second, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party.*" Anderson v. Liberty Lobby, Inc., 477 U.S 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (emphasis added). Finally, if the factual context makes the nonmoving party's claim *implausible*, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment. 818 F.2d at 1466.

The parol evidence rule generally precludes the use of extrinsic evidence to vary or contradict the terms of an unambiguous and integrated contract—a writing the parties have adopted as the expression of their final agreement. 29A Am Jur 2d,

Evidence, §1092. The rule is codified in Guam law by 6 GCA §2511, which reads as follows:

> §2511. An Agreement Reduced to Writing Deemed the Whole.
>
> When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases
>
> 1. Where a mistake or imperfection of the writing is put in issue by the pleadings, or
>
> 2. Where the validity of the agreement is the fact in dispute.
>
> But this Section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in §2515 [Circumstances to be Considered], or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term agreement includes deeds and wills, as well as contracts between parties

The Compiler's Comment to §2511 states, "This is the classic Parol Evidence Rule."

Written agreements often contain "merger clauses" which formally state that the writing contains the entire agreement of the parties and that it may not be modified without the signed written agreement of both parties. While these provide an additional reason for applying the rule, the absence of such a clause does not negate the rule. 29A Am Jur 2d, Evidence, §1096. There is no requirement for such a clause in §2511.

While denominated as a rule of evidence, it is actually matter of substantive law.

> The parol evidence rule is a rule of substantive law, rather than a mere rule of evidence. The rule has nothing to do with the probative value of one fact as persuasive of the probable existence of another fact; rather, it deals with the question of where the terms of a legal act are to be found. Although the parol evidence rule is not itself a rule of interpretation, it fixes the subject matter for interpretation, and where applicable, it defines the limits of a contract. 29A Am Jur 2d, Evidence, §1093.

Because it is substantive law, and not included within the Federal Rules of Evidence, state/territorial law controls in cases based on diversity jurisdiction. *Yoder v. Nutrena Mills, Inc.*, 294 F.2d 505, 512-13 (8th Cir. 1961); *Orr v. Bank of America*, 285 F.3d 764, 772 (9th Cir. 2002).

Judgment on the pleadings and/or summary judgment are appropriate where the only evidence offered to create a material issue of fact is barred by the rule. *Midkiff v. Castle & Cook, Inc.*, 368 P.2d 887 (Hi. 1962); *Yoder v. Nutrena Mills, Inc.*, *supra*.

## II. FACTS

Paragraphs 1, 2, 4, 5, and 6 of the Complaint alleging that the Court has jurisdiction over this matter; that the amount in controversy exceeds SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00); that Defendant is a corporation organized, existing and doing business under the laws of Guam; that, on or about March 10, 2001, Plaintiff and Defendant entered into an Agreement by which Defendant borrowed ONE HUNDRED MILLION JAPANESE YEN (¥100,000,000) from Plaintiff; and that the actual transfer of the funds to Defendant was accomplished by way of

two wire transfers of FIFTY MILLION JAPANESE YEN (¥50,000,000) through a corporate subsidiary of Plaintiff, have been admitted.

Paragraph 3, alleging that Plaintiff at all times relevant herein, is a foreign corporation organized and existing under the laws of Japan is denied on the basis of insufficient information.[1] Plaintiff submits that this denial is of no force or effect as Defendant has previously admitted the corporate existence of Plaintiff in Civil Case No. 02-00015, which involved the instant parties, who were represented by the same attorneys, and which involved another dispute as to the same basic business, that is the catching, transshipping and marketing of tuna. The first page of the Complaint in Civil Case No. 02-00015, in which Paragraph 2 alleges the corporate existence of Plaintiff, and the first page of the Answer, in which Paragraph 2 is admitted, are attached and incorporated herein as **Exhibits "A" and "B"**.

Paragraphs 7, 8, 9 and 10, alleging that, pursuant to the terms of the Agreement, Defendant was required to repay the loan in installments of FIVE MILLION JAPANESE YEN (¥5,000,000) at the end of each month beginning with January of 2002; that the Agreement further provides that Defendant shall pay interest of two percent (2%) per annum from the date of the transfer of the funds, to be calculated and paid after the final payment of principal is due; that, as of the end of July of 2002, THIRTY-FIVE MILLION JAPANESE YEN (¥35,000,000) is due and payable and Defendant has failed and refused to pay any of this amount; and that additional installments will become due and payable prior to the entry of judgment, should Defendant fail and refuse to pay these, have been denied.

Plaintiff submits that these denials are also of no force or effect, as the paragraphs denied simply reflect the terms of the Agreement, the existence of which Defendant has admitted, and the logical consequences of failing to comply with it.

Defendants asserts as a series of affirmative defenses that, "Notwithstanding the agreement attached to the Complaint", the transaction was not an actual loan, that Defendant's President, was deceived by the document as he does not read or write English,[2] and that Plaintiff breached an alleged duty not set forth in the Agreement.

## III. ARGUMENT

6 GCA §2511 clearly applies to the Agreement at issue as it has been reduced to writing. While it appears to have been drafted by somebody for whom English is not his first language and not a lawyer, it leaves no doubt that is it a simple and unambiguous loan transaction. It clearly identifies the parties, the amount borrowed and terms of repayment. The phrase "Guam YTK shall repay the above mentioned amount to Kaioh", leaves no room for "interpretation", however creative. The provision for payment of interest is consistent with a loan transaction and inconsistent with an equity investment or whatever Defendant claims it to otherwise be.

The attempt to characterize the transaction as something other than a loan is an attempt to vary and contradict the terms of the Agreement, and evidence of the terms of the agreement other than the contents of the writing is barred by §2511.

---

[1] In *Yoder v. Nutrena Mills, Inc.*, supra, the court basically brushed off a denial of corporate status based on insufficient information where the defendant did not seriously contest it. 294 F.2d at 510.
[2] The Sixth Affirmative Defense states, in part, "The agreement was drafted by Defendant for Tom Kamiyama's signature. Defendant's authorized representative . . ." Plaintiff assumes that Defendant meant to use the term "Plaintiff" where it uses the term "Defendant".

-7-

Defendant cannot argue that no contract was ever formed because it has affirmed its validity by admitting that it accepted the funds in question. The Supreme Court of Guam, in <u>Leong v. Deng</u>, 2002 Guam 2, has interpreted Subparagraph 2 of §2511 (Where the *validity* of the agreement is the fact in dispute) to allow the use of parol evidence to establish the existence of a condition precedent to the formation of a contract. However, here Defendant is not claiming that an agreement was never reached; it is claiming that the agreement is radically different from that which was reduced to writing. The District Court of Guam, Appellate Division, in <u>Hair v. Flores</u>, Case No. 84-0010A, 1986 WL 68520 (D.Guam A.D.) has applied the rule to bar evidence of an alleged oral modification of a deed. The Ninth Circuit Court of Appeals has interpreted §2511 (then codified as Code of Civil Procedure §1856) to bar evidence of an alleged oral modification of an employment contract. <u>McNamara v. Jones & Guerrero, Inc.</u>, 417 F.2d 1188 (9th Cir. 1969).

An excellent example of the application of the rule to a similar set of facts is found in <u>Yoder v. Nutrena Mills, Inc.</u>, *supra*. There, the Plaintiff, a feed company, entered into a series of contracts and promissory notes with two turkey growers whereby Plaintiff provided turkey feed on credit in exchange for an agreement that the Defendants would purchase all of their requirements from Plaintiff. There, as here the defendants admitted entering into the agreements and accepting the benefits. Their only defense was that there were additional oral agreements, which the Plaintiff had breached. Their Answer stated, in part:

> Defendants admit the allegations contained in Par. 4 of Plaintiff's petition but alleges that said agreement referred to as Exhibit 'A' was delivered by the defendants to the Plaintiff, Nutrena Mills, Inc. upon stated and specific conditions, to wit.

-8-

That the Plaintiff, Nutrena Mills, Inc., would furnish sufficient feed to feed out all the turkeys purchased by the defendants or raised by them without regard to the maximum amount set forth in said Exhibit 'A' and would provide the necessary financing to pay off the balance remaining due on the turkey operation from the preceding year which conditions were orally expressed and were understood between defendants and the agents and representative of the plaintiff and were relied upon by these defendants. 294 F.2d at 510-11.

The District Court granted summary judgment based on the Iowa parol evidence rule. On appeal, the 8th Circuit, noting that there was absolutely no dispute as to the written terms of the agreements, the performance of the Plaintiff or the default of the Defendants, and accepting all of the Defendants' evidence of the alleged oral agreements as true, affirmed stating:

> But even with such extensiveness given to that testimony and its import under the motion, we find it in conflict with the Iowa parol evidence rule and the exception the appellants have invoked and therefore not competent, under the authorities to which we have referred. The contracting parties made their writings the 'memorials' of their understanding. Those are their contracts as a matter of law and nothing may be added to them or substituted in their stead' (Emphasis supplied) See <u>Martin v Stewart Motor Sales</u>, <u>City of Des Moines v City of West Des Moines</u>, and <u>In re Simplot's Estate,</u> supra. 294 F.2d at 516.

By the same token, Defendant has admitted the existence and terms of the written Agreement and that it accepted ¥100,000,000 as the result of it.

Defendant's attempted defense that its President did not understand the Agreement changes nothing.

> As a general principle, one who accepts a written contract is conclusively presumed to know its contents and to assent to them, in the absence of fraud, misrepresentation, or other wrongful act by another contracting party. Thus, ignorance of the contents of a contract expressed in a written instrument does not ordinarily affect the liability of one who signs it or

-9-

> who accepts it otherwise than by signing it. If a person acts negligently and in such a way as to justify others in supposing that the writing is assented to by him, he will be bound both at law and in equity, even though he supposes that the writing is an instrument of an entirely different character. 17 Am Jur 2d §224.

See also, 14 Cal Jur 3d (Rev) Part 1, Contracts, §49; <u>Palmquist v. Mercer</u>, 43 Cal.2d 92, 272 P.2d 26 (1954). Defendant cannot claim any fraud or misrepresentation on the part of Plaintiff, inasmuch as Plaintiff has fully performed its part of the bargain. Further, assuming an actual misunderstanding by Defendant, the retention of the benefit after being notified of the mistake, eliminates this as a defense.

> Acceptance or retention of benefits after a mistake in identity is discovered and the facts that become known may warrant a recovery. Recovery may be had where the defendant has received goods with the knowledge that they were shipped by the plaintiff, has appropriated them to his use after notice that they were furnished by the plaintiff, or has refused to surrender them upon demand by the plaintiff. But mere receipt of goods without knowledge that they were sent by an unauthorized person and mere retention of them in the absence of a demand for them by their sender do not warrant a recovery. 17 Am Jur 2d §223.

Defendant has acknowledged that it knew where the money came from and a demand for payment is inherent in the terms of the Agreement.

### IV. CURRENCY OF JUDGMENT

Plaintiff seeks judgment in the alternative either for ONE HUNDRED MILLION JAPANESE YEN (¥100,000,000) or the dollar equivalent pursuant to 13 GCA §3107(2). §3107 reads as follows:

> §3107. Money. (1) An instrument is payable in money if the medium of exchange in which it is payable is money at the time the instrument is made. An instrument payable in currency or current funds is payable in money.
>
> (2) A promise or order to pay a sum stated in a foreign currency is for a sum certain in money and, unless a different medium of payment is specified in the instrument, may be satisfied by payment of that number of dollars which the stated foreign currency will purchase at the buying sight rate for that currency on the day on which the instrument is payable or, if payable on demand, on the day of demand. If such an instrument specifies a foreign currency as the medium of payment the instrument is payable in that currency.

Attached, as **Exhibit "C",** is the U.S. Dollar/Japanese Yen exchange rate as compiled by the web site, www.x-rates.com, beginning with the month of January, 2002, the month in which the first installment of ¥5,000,000 was due and payable, as well as the succeeding months to date. Attached, as **Exhibit "D"** is a spreadsheet performing the exchange calculation for each monthly installment based on the exchange rate for that month. As of this writing ¥65,000,000 with a U.S. Dollar value of FIVE HUNDRED TWENTY-ONE THOUSAND NINE HUNDRED THIRTY AND 08/100 DOLLARS ($521,930.08) is owed. Plaintiff assumes that this compilation is as accurate as anything else available but recognizes the right of Defendant to proffer its own proof as to the appropriate exchange rate should it choose to do so.

It has also been held in *In re Oil Spill by the Amoco Cadiz off the Coast of France on March 16, 1978*, 954 F.2d 1279 (7th Cir. 1992), that an American court may enter Judgment in a foreign currency.

> Foreign currency awards are rare in federal courts of the United States--this may be the first--because §20 of the coinage Act of 1792, 31 U.S.C. §371 (1976), provided that "[t]he money of account of the United States shall be expressed in dollars and all proceedings in the courts shall be

kept and had in conformity to this regulation. Congress repealed this section of the Coinage Act in 1982. Section 5101 of Pub.L. 97-258, 96 Stat 980. See 31 U SC § 5101. There is now no bar to judgment in the appropriate currency. *Restatement (3d) of Foreign Relations* §823(1); see also *Uniform Foreign-Money Claims Act* §7(b) (1989); UCC §3-107(2).

Judgment in a foreign currency is especially attractive when the commercial activity took place in that currency. Parties that conduct their dealings in francs, rubles, pesos. yuan, bolivars, or australs either accept the risk of changes in the value of that currency or have made provisions to hedge against that risk Computing an award in cruzeiros and then converting to dollars creates a risk that the parties did not accept--the risk that the judge will select an inapt date or use a currency no one had included in hedging plans Fights over conversion dates are inevitable whenever judges enter dollar awards to redress injuries denominated in other currencies. (citations omitted) Thus the English rule should be used in the United States too--not because the choice-of-law provision in this contract requires it, but because it is the right rule for commerce. The court should enter the judgment in the currency the parties themselves selected for their dealings, the currency in which the loss is felt. All problems about conversion dates vanish, and the parties' hedging strategies (or lack thereof) proceed unimpeded. 954 F.2d at 1328.

## V. **CONCLUSION**

Defendant has acknowledged signing a written Agreement to borrow ¥100,000,000 and actually receiving that amount pursuant to the Agreement. The unambiguous terms of the Agreement require that Defendant repay the loan at the rate of ¥5,000,000 per month beginning January, 2002 and Defendant has failed to pay anything. Defendant only "defense" is that the Agreement is something very different than what it says it is. This defense is barred by the parol evidence rule.

Plaintiff requests judgment for ¥5,000,000 times as many monthly installments as may be due and payable at the time of entry of judgment and for all future installments as they become due and payable.

In the alternative Plaintiff requests judgment for the dollar equivalent of each monthly installment as may be due and payable at the time of entry of judgment and for all future installments as they become due and payable, pursuant to the exchange rate proposed by Plaintiff or such other rate as the Court may utilize.

Plaintiff further requests interest at two percent from the due date of each installment until the date of judgment and postjudgment interest.

Dated this 6th day of February, 2003.

**McKEOWN • VERNIER • PRICE • MAHER**
Attorney for Plaintiff
**KAIOH SUISAN CO., LTD.**

By: _____
TERENCE E. TIMBLIN

# CERTIFICATE OF SERVICE

I, **TERENCE E. TIMBLIN**, hereby certify that on the 6th day of February, 2003, I caused a copy of the annexed **PLAINTIFF KAIOH SUISAN CO., LTD.'S MOTION FOR SUMMARY JUDGMENT** to be served upon Defendant, by delivering and leaving a copy of same to its attorney of record, as follows:

**Phillip Torres**
**TEKER CIVILLE TORRES & TANG, PLLC**
Suite 200, 330 Hernan Cortez Avenue
Hagåtña, Guam 96910

Dated this 6th day of February, 2003.

**McKEOWN • VERNIER • PRICE • MAHER**
Attorneys for Plaintiff
**KAIOH SUISAN CO., LTD.**

BY: _____
TERENCE E. TIMBLIN

\\Valerie\c\MarieBackup\My Documents\CLIENTS (NON-GIA)\KAIOH SUISAN CO. LTD\Kaioh v Guam YTK - USDC CVA02-00021\Pleadings\MSJ 020503.doc

-14-

John B. Maher
McKEOWN • VERNIER • PRICE • MAHER
A Joint Venture of McKeown Price LLP
 and Vernier & Maher LLP
115 Hesler Place
Ground Floor, Governor Joseph
 Flores Building
Hagåtña, Guam 96910
Telephone: (671) 477 7059
Facsimile: (671) 472-5487

**FILED**
DISTRICT COURT OF GUAM

MAY 23 2002

MARY L.M. MORAN
CLERK OF COURT

Attorney for Plaintiff
KAIOH SUISAN CO., LTD.

## UNITED STATES DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| KAIOH SUISAN CO., LTD. | ) | CIVIL CASE NO. **02-00015** |
| Plaintiff, | ) | |
| vs. | ) | **COMPLAINT** |
| TOM T. KAMIYAMA, YOSHIE M. KAMIYAMA and GUAM YTK CORP., | ) | |
| Defendants. | ) | |

COMES NOW Plaintiff KAIOH SUISAN CO., LTD. ("KAIOH SUISAN") through counsel McKEOWN • VERNIER • PRICE • MAHER, by John B. Maher and complains against the above-named Defendants as follows:

1. This Court has jurisdiction over this matter pursuant to 28 USC §1332.

2. The amount in controversy is at least Two Hundred Thousand Dollars ($200,000.00).

3. Plaintiff KAIOH SUISAN, at all times relevant herein, is a foreign corporation organized and existing under the laws of Japan.

-1-

**Exhibit A**

**TEKER CIVILLE TORRES & TANG, PLLC**
SUITE 200, 330 HERNAN CORTEZ AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891/472-8868
FACSIMILE: (671) 472-2601/477-2511

*Attorneys for Defendants*

FILED
DISTRICT COURT OF GUAM
JUN 2 4 2002
MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM
TERRITORY OF GUAM

----------

| | |
|---|---|
| KAIOH SUISAN CO., LTD. ) | CIVIL CASE NUMBER CIV02-00015 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ANSWER TO COMPLAINT** |
| ) | |
| TOM T. KAMIYAMA, YOSHIE M. ) | |
| KAMIYAMA and GUAM YTK ) | |
| CORPORATION, ) | |
| ) | |
| Defendants. ) | |

RECEIVED
McKEOWN. VE...
F. C. MA...
DATE: 6/24/02
TIME: 4:33pm
BY: ____

----------

Tom T. Kamiyama, Yoshie M. Kamiyama and Guam YTK Corporation answers Plaintiffs Complaint and admits, denies and alleges as follows:

### JURISDICTION AND VENUE

1. Defendants admits the allegations in paragraphs 1 to 6, inclusive.

### FACTUAL ALLEGATIONS

2. Defendants admits the allegations in paragraphs 1, 6 and 9 of Plaintiff's first cause of action.

3. Defendants denies the allegations in paragraphs 2, 3, 4, 5, 7, 8, 10, 11, 12, 13, 14, 15, 18, 19, 10, and 21.

Exhibit B

**x-rates.com**



**Menu**

. **Currency Calculator**
. **Custom Table**
. **Historic Lookup**
. **Buy Currency**
. **Currency Photos**
. **Home**

**advertising**

notaviva
Poco moto.
pp
free sheet music
about ads on this site

**More Links**

. **Euro Information**
. **Bookmark help**
. **Frequent questions**
. **Feedback**
. **Developers**
. **Advertising FAQ**
. **Advertise here**
. **Terms of Service**

**2002** - Japanese Yens to 1 USD (**invert**)

[bar chart: Jan Feb Mar Apr May Jun Jul Aug Sep Oct Nov Dec]

Average Rates

| Month | Rate | Days |
|---|---|---|
| January | 132.628 JPY | (21 days average) |
| February | 133.647 JPY | (19 days average) |
| March | 131.061 JPY | (21 days average) |
| April | 130.816 JPY | (20 days average) |
| May | 126.375 JPY | (22 days average) |
| June | 123.29 JPY | (20 days average) |
| July | 117.899 JPY | (22 days average) |
| August | 119 JPY | (21 days average) |
| September | 121.078 JPY | (20 days average) |
| October | 123.908 JPY | (22 days average) |
| November | 121.505 JPY | (20 days average) |
| December | 121.893 JPY | (21 days average) |

base currency [American Dollar]
change target currency by clicking on list at right

year [2002]

graph : **30 days** | **120 days** | monthly average
use **American Dollar** as target currency

**Currency**

. American Do
. Argentine Pe
. Australian D
. Bahraini Din
. Botswana Pu
. Brazilian Re
. British Poun
. Canadian Do
. Chilean Peso
. Chinese Yua
. Colombian P
. Czech Korun
. Danish Kron
. Euro
. Hong Kong
. Hungarian F
. Iceland Kror
. Indian Rupe
. Iraqui Dinar
. Israeli New
. Japanese Ye
. Malaysian Ri
. Mexican Pes
. Nepalese Ru
. New Zealand
. Norwegian K
. Omani Rial
. Pakistan Ru
. Polish Zloty
. Qatari Rial
. Saudi Riyal
. Singapore D
. Slovenian Tc
. South Africa
. South Korea
. Sri Lanka Ru
. Swedish Kro
. Swiss Franc
. Taiwan Doll
. Thai Baht
. Utd. Arab Er
. Venezuelan

# x-rates.com



**Menu**

- Currency Calculator
- Custom Table
- Historic Lookup
- Buy Currency
- Currency Photos
- Home

**advertising**



free sheet music
about ads on this site

**More Links**

- Euro Information
- Bookmark help
- Frequent questions
- Feedback
- Developers
- Advertising FAQ
- Advertise here
- Terms of Service

**2003** - Japanese Yens to 1 USD (invert)

Average Rates

January
    118.813 JPY   (21 days average)

February
    120.11 JPY   (2 days average)


change target currency by clicking on list at right



graph : **30 days** | **120 days** | monthly average
use **American Dollar** as target currency

**Currency**

- American D
- Argentine P
- Australian D
- Bahraini Din
- Botswana P
- Brazilian Re
- British Poun
- Canadian D
- Chilean Pes
- Chinese Yua
- Colombian P
- Czech Korun
- Danish Kron
- Euro
- Hong Kong [
- Hungarian F
- Iceland Kror
- Indian Rupe
- Iraqui Dinar
- Israeli New
- Japanese Ye
- Malaysian Ri
- Mexican Pes
- Nepalese Ru
- New Zealand
- Norwegian k
- Omani Rial
- Pakistan Ru
- Polish Zloty
- Qatari Rial
- Saudi Riyal
- Singapore D
- Slovenian T
- South Africa
- South Korea
- Sri Lanka R
- Swedish Kro
- Swiss Franc
- Taiwan Doll
- Thai Baht
- Utd. Arab Er
- Venezuelan

**advertise** on this site
read our **privacy policy**

© 2001 **x-rates.com**, all rights reserved
**Terms of Use, Copyright and Disclaimer**

we like **feedback**
**answers** to frequently asked questions

Kaioh v. YTK, Civ Case No. 02-00021: Dollar/Yen Exchange

| DATE | YEN | EXCH. RATE | DOLLARS |
|---|---|---|---|
| January 31, 2002 | 5,000,000 | 132.628 | $37,699.43 |
| February 28, 2002 | 5,000,000 | 133.647 | $37,411.99 |
| March 31, 2002 | 5,000,000 | 131.061 | $38,150.17 |
| April 30, 2002 | 5,000,000 | 130.816 | $38,221.62 |
| May 31, 2002 | 5,000,000 | 126.375 | $39,564.79 |
| June 30, 2002 | 5,000,000 | 123.29 | $40,554.79 |
| July 31, 2002 | 5,000,000 | 117.899 | $42,409.18 |
| August 31, 2002 | 5,000,000 | 119 | $42,016.81 |
| September 30, 2002 | 5,000,000 | 121.078 | $41,295.69 |
| October 31, 2002 | 5,000,000 | 123.908 | $40,352.52 |
| November 30, 2002 | 5,000,000 | 121.505 | $41,150.57 |
| December 31, 2002 | 5,000,000 | 121.893 | $41,019.58 |
| January 31, 2003 | 5,000,000 | 118.813 | $42,082.94 |
| February 28, 2003 | 5,000,000 | | |
| March 31, 2003 | 5,000,000 | | |
| April 30, 2003 | 5,000,000 | | |
| May 31, 2003 | 5,000,000 | | |
| June 30, 2003 | 5,000,000 | | |
| July 31, 2003 | 5,000,000 | | |
| August 31, 2003 | 5,000,000 | | |
| TOTAL | 100,000,000 | | $521,930.08 |


Exhibit D