Terence E. Timblin
McKEOWN • VERNIER • PRICE • MAHER
A Joint Venture of McKeown Price LLP
 and Vernier & Maher LLP
115 Hesler Place
Ground Floor, Governor Joseph
 Flores Building
Hagåtña, Guam 96910
Telephone: (671) 477 7059
Facsimile: (671) 472-5487

Attorney for Plaintiff
KAIOH SUISAN CO., LTD.

# UNITED STATES DISTRICT COURT

# DISTRICT OF GUAM

| | |
|---|---|
| KAIOH SUISAN CO., LTD.<br><br>  Plaintiff,<br><br>  vs.<br><br>GUAM YTK CORP.,<br><br>  Defendant. | CIVIL CASE NO. 02-00021<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARYJUDGMENT; CERTIFICATE OF SERVICE** |

Plaintiff, KAIOH SUISAN CO., LTD. ("KAIOH"), through counsel, McKEOWN • VERNIER • PRICE • MAHER, by TERENCE E. TIMBLIN, hereby replies to Defendant GUAM YTK CORP.'s Opposition to Motion for Summary Judgment filed on March 14, 2003 (Defendant's "Opposition") as follows:

-1-

# REPLY

Defendant's Opposition fails to allege any facts that would create a material issue of fact, Plaintiff KAIOH is not required to have a Guam business license and summary judgment should be granted.

Defendant argues that there is a material issue of fact surrounding the formation of the Agreement and Plaintiff KAIOH may not enforce it because it has no license to do business in Guam. These contentions will be dealt with separately.

## A. LACK OF A MATERIAL ISSUE OF FACT

Defendant acknowledges the applicability of the parol evidence rule but argues that an exception exists as to the circumstances under which the agreement was made. The circumstance in question is Mr. Kamiyama's inability to understand English. As noted in the original Motion, the failure of a party who voluntarily signs a contract to understand it does not render it invalid. Defendant not only fails to refute the authority cited, he does not even address it. This amounts, in effect, to a nonopposition to the Motion.

Defendant notes the lack of reference to collateral and asserts that making an unsecured loan is "commercially unreasonable", which somehow makes the Agreement ambiguous. First of all, there are an infinite number of terms that may be incorporated into a given contract and the failure to include one of these does nothing to render the ones that are included ambiguous. Second, there is no requirement that a loan agreement must provide for collateral and unsecured loans are made all the time. There would be no credit card industry without them. And third, while it was certainly commercially unwise on the part of Plaintiff KAIOH to not obtain collateral,

given Defendant's blatant breach of the Agreement, it is not commercially unreasonable. The notion that a creditor's misguided trust of a debtor is somehow wrongful as to the debtor is right out of Alice's looking glass.

Defendant makes reference to the wire transfer documents by which it admittedly received the Hundred Million Yen (¥100,000,000) and states that they were "for the payment of fish" and that this somehow contradicts the terms of the Agreement. A review of the documents shows that they each contain boxes labeled "PURPOSE" and "MERCHANDISE" in which the words "ADVANCE PAYMENT" and "TUNA" are respectively typed in. This adds nothing to Defendant's argument. The documents are nothing more than a vehicle for the transfer of money and the statements therein were made to the bank, not Defendant, and in no way reflect on the Agreement. Even if they did, they do not contradict it. Loans are in essence an advance of money with the expectation of eventual repayment. The term "TUNA" does nothing more than indicate what the overall business venture, of which the loan was a part, was about.

Perhaps the biggest flaw in Defendant's attempt to create a material issue of fact is its failure to allege what its version of the facts is. Mr. Kamiyama states in his Declaration that, "I have never made a payment on this transaction because it is not a loan." What is missing is any allegation of what the transaction was, if it was not a loan. Western capitalism generally recognizes two (2) forms of investment: debt and equity. A debt transaction involves the loan of money with the money to be repaid at an agreed time or times with interest. An equity transaction involves the purchase of an ownership interest in the subject enterprise with the right to share in any profits.

Such transactions virtually all involve documents such as subscription agreements or stock certificates setting forth the percentage of ownership purchased and the various rights associated with it.

There is absolutely no allegation as to precisely what Plaintiff KAIOH was getting in return for its Hundred Million Yen (¥100,000,000) nor has there been any documentation to back it up. If Defendant is asserting the existence of some third form of investment, it has done a very poor job of describing it. Defendant, in essence, is asking this Court to disregard an unambiguous written loan agreement and find that Plaintiff KAIOH invested One Hundred Million Yen (¥100,000,000) to obtain an unknown interest in an unspecified enterprise with an unknown return at an unknown date upon the occurrence of unstated contingencies. Plaintiff KAIOH may have been imprudent in lending money to Defendant without adequate security but it was not delusional.

### B. NO BUSINESS LICENSE WAS REQUIRED

Defendant asserts that this claim is barred by the Guam Business License Law. The only citation is to "11 G.C.A.". Presumably Defendant is referring to 11GCA §70130(d), which reads as follows.

> (d) no commercial activity (including operating or leasing of real property) doing business on Guam without a business license may file suit in Guam courts until such time that a business license is obtained. No person engaged in commercial activity without a business license may use the courts to enforce, directly or indirectly, any obligation, lien, or contract incurred during the period of such commercial activity without a business license…

11 GCA §70130(d).

Initially, the question arises, what are "Guam courts"? Are they only courts created by the Government of Guam or do they include any court that is physically located on Guam, which would include this Court. Assuming for purposes of this Motion that the statute applies to this Court, the issue remains whether the lending of money by a business in Japan to a business on Guam, constitutes business done on Guam. The Supreme Court of Guam has answered this question in the negative in <u>EIE Guam Corporation v. Long Term Credit Bank of Japan</u>, 1998 Guam 6.

In that case, the Court held that a bank in Japan, which lent money that was used to build a hotel on Guam, was not doing business on Guam so far as the requirement of a business license was concerned. The Court noted that the basic purpose of §70130 is to enforce collection of the gross receipts tax and that the bank, in this instance, was not required to pay this.

> [17] This statute, however, is not applicable to a foreign bank engaging in a transaction listed in 11 GCA § 106730. The purpose of 11 GCA § 70130 is to obtain compliance and collection of gross receipts taxes. 11 GCA § 70130(f) requires a court to "liberally construe subsections (b) through (e) of this Section in favor of . . . the business person and . . . ignore technical deficiencies if the courts find there has been substantial compliance with the business license laws, rules, and regulations and if the courts find that the landlord or business person has filed on a timely basis . . . gross receipts tax returns fully reporting all accountable revenues from the activity concerned for the periods in question . . . ."
>
> [18] However, a foreign bank conducting a transaction pursuant to 11 GCA § 106730 is not subject to gross receipt taxes. . .
>
> [19] It is apparent the types of banks required to pay gross receipts taxes would be those located on island including foreign banks licensed pursuant to § 106725. A foreign bank

-5-

so licensed would be required under 11 GCA § 106724 to keep separate accounting records of assets, liabilities, income, expenses, etc. to enable the determination of the gross receipts tax. Moreover, such a bank maintains accounting records locally that permit the audit and verification of calculations of gross tax receipts. *Id.*

[20] The statute also requires that the gross tax calculation be based on income from all sources. It is highly unlikely that Guam would undertake the collection of taxes on all income sources of a foreign bank because of its loan secured by mortgage property. Equally difficult to imagine would be allowing a bank such as LTCB to deduct from income all of its worldwide expenses.

Thus, the Business License law and the associated penalties for its violation have no application where either: 1) all GRT that is required to be paid is in fact paid; or 2) no GRT is required to be paid. Plaintiff KAIOH's only connection with Guam is the lending of money to a business on Guam, and is therefore not subject to the gross receipts tax. Since the purpose of §70130 is to promote tax collection by the Government of Guam, and not to permit private debtors to abscond from obligations that they freely entered into, it simply does not apply.

Dated this 19th day of March, 2003.

        **McKEOWN • VERNIER • PRICE • MAHER**
        **Attorney for Plaintiff**
        **KAIOH SUISAN CO., LTD.**

        By: _/s/ Terence E. Timblin_
             TERENCE E. TIMBLIN

## CERTIFICATE OF SERVICE

I, **TERENCE E. TIMBLIN**, hereby certify that on the 19th day of March, 2003, I caused a copy of the annexed **PLAINTIFF KAIOH SUISAN CO., LTD.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** to be served upon Defendant, by delivering and leaving a copy of same to its attorney of record, as follows:

**Phillip Torres**
**TEKER CIVILLE TORRES & TANG, PLLC**
Suite 200, 330 Hernan Cortez Avenue
Hagåtña, Guam 96910

Dated this 19th day of March, 2003.

**McKEOWN • VERNIER • PRICE • MAHER**
**Attorneys for Plaintiff**
**KAIOH SUISAN CO., LTD.**

BY: _____
TERENCE E. TIMBLIN

\\Valerie\c\MarieBackup\My Documents\CLIENTS (NON-GIA)\KAIOH SUISAN CO. LTD\Kaioh v Guam YTK - USDC CVA02-00021\Pleadings\Reply in Support of MSJ 031803.doc